## QUEENSIDE HILLS REALTY CO., INC. *v.* SAXL, COMMISSIONER OF HOUSING AND BUILDINGS OF THE CITY OF NEW YORK.

No. 769.   Argued March 28, 1946.—Decided April 22, 1946.

*George G. Lake* argued the cause and filed a brief for appellant.

*Edward G. Griffin* argued the cause for appellee. With him on the brief were *John J. Bennett* and *Joseph F. Mulqueen, Jr.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

In 1940 appellant constructed a four-story building on the Bowery in New York City and since that time has operated it as a lodging house. It was constructed so as to comply with all the laws applicable to such lodging houses and in force at that time. New York amended its Multiple Dwelling Law [1] in 1944,[2] providing, *inter alia,* that lodging houses "of non-fireproof construction existing prior to the enactment of this subdivision" [3] should comply with certain new requirements.[4] Among these was the installation of an automatic wet pipe sprinkler system. Appellant received notice to comply with the new requirements and thereupon instituted this suit in the New York courts for a declaratory judgment holding these provisions of the 1944 law unconstitutional and restraining their enforcement.

---

[1] L. 1929, ch. 713; Cons. L. ch. 61A.

[2] L. 1944, ch. 553.

[3] *Id.,* § 4.

[4] This followed a disastrous fire in an old lodging house in New York City in which there was a considerable loss of life.

The bill alleged that the building was safe for occupancy as a lodging house and did not constitute a fire hazard or a danger to the occupants; that it complied with all building laws and regulations at the time of its construction; that part of it was fireproof and that the rest was so constructed as not to be dangerous to occupants; that the regulations existing prior to 1944 were adequate and sufficient to prevent loss of life in lodging houses of this particular type. It was further alleged that this lodging house has a market value of about $25,000, that the cost of complying with the 1944 law would be about $7,500; and that the benefits to be obtained by the changes were negligible. By reason of those circumstances the 1944 law was alleged to violate the due process clause of the Fourteenth Amendment. It was also alleged to violate the equal protection clause of the Fourteenth Amendment since it was applicable to lodging houses "existing" prior to the 1944 law but not to identical structures erected thereafter. Appellee answered, denying the material allegations of the bill, and moved to dismiss. The Supreme Court granted the motion. The Appellate Division affirmed without opinion. 269 App. Div. 691, 54 N. Y. S. 2d 394. On appeal to the Court of Appeals the judgment was likewise affirmed without opinion. 294 N. Y. 917, 63 N. E. 2d 116. The case is here on appeal, the Court of Appeals having certified by its remittitur that questions involving the Fourteenth Amendment were presented and necessarily passed upon. 295 N. Y. 567, 64 N. E. 2d 278.

Little need be said on the due process question. We are not concerned with the wisdom of this legislation or the need for it. *Olsen* v. *Nebraska,* 313 U. S. 236, 246. Protection of the safety of persons is one of the traditional uses of the police power of the States. Experts may differ as to the most appropriate way of dealing with fire hazards in lodging houses. Appellant, indeed, says that its building,

far from being a fire-trap, is largely fireproof; and to the extent that any fire hazards exist, they are adequately safeguarded by a fire alarm system, constant watchman service, and other safety arrangements. But the legislature may choose not to take the chance that human life will be lost in lodging house fires and adopt the most conservative course which science and engineering offer. It is for the legislature to decide what regulations are needed to reduce fire hazards to the minimum. Many types of social legislation diminish the value of the property which is regulated. The extreme cases are those where in the interest of the public safety or welfare the owner is prohibited from using his property. *Reinman* v. *Little Rock*, 237 U. S. 171; *Hadacheck* v. *Sebastian*, 239 U. S. 394; *Pierce Oil Corp.* v. *Hope*, 248 U. S. 498. We are dealing here with a less drastic measure. But in no case does the owner of property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws. *Hadacheck* v. *Sebastian*, *supra*, p. 410. And see *Chicago, B. & Q. R. Co.* v. *Nebraska*, 170 U. S. 57; *Hutchinson* v. *Valdosta*, 227 U. S. 303. The police power is one of the least limitable of governmental powers, and in its operation often cuts down property rights. *Block* v. *Hirsh*, 256 U. S. 135, 155. And see *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531. Appellant may have a lodging house far less hazardous than the other existing structures regulated by the 1944 law. Yet a statute may be sustained though some of the objects affected by it may be wholly innocent. *Purity Extract Co.* v. *Lynch*, 226 U. S. 192, 204. The question of validity turns on the power of the legislature to deal with the prescribed class. That power plainly exists here.

Appellant's claim of lack of equal protection is based on the following argument: The 1944 law applies only to

existing lodging houses; if a new lodging house were erected or if an existing building were converted into a lodging house, the 1944 law would be inapplicable. An exact duplicate of appellant's building, if constructed today, would not be under the 1944 law and hence could be lawfully operated without the installation of a wet pipe sprinkler system. That is said to be a denial of equal protection of the laws.

The difficulty is that appellant has not shown that there are in existence lodging houses of that category which will escape the law. The argument is based on an anticipation that there may come into existence a like or identical class of lodging houses which will be treated less harshly. But so long as that class is not in existence, no showing of lack of equal protection can possibly be made. For under those circumstances the burden which is on one who challenges the constitutionality of a law could not be satisfied: *Metropolitan Casualty Insurance Co.* v. *Brownell,* 294 U. S. 580, 584. The legislature is entitled to hit the evil that exists. *Patsone* v. *Pennsylvania,* 232 U. S. 138, 144; *Bryant* v. *Zimmerman,* 278 U. S. 63; *Bain Peanut Co.* v. *Pinson,* 282 U. S. 499. It need not take account of new and hypothetical inequalities that may come into existence as time passes or as conditions change. So far as we know, the 1944 law may have been designed as a stop-gap measure to take care of a pressing need until more comprehensive legislation could be prepared. It is common knowledge that due to war conditions there has been little construction in this field in recent years. By the time new lodging houses appear they, too, may be placed under the 1944 law; or different legislation may be adopted to take care both of the old and the new on the basis of parity. Or stricter standards for new lodging houses may be adopted. In any such case the asserted discrimination would have turned out to be fanciful, not real. The point is that lack

of equal protection is found in the actual existence of an invidious discrimination (*Truax* v. *Raich,* 239 U. S. 33; *Skinner* v. *Oklahoma,* 316 U. S. 535), not in the mere possibility that there will be like or similar cases which will be treated more leniently.

*Affirmed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.