Van Voorhis, J. (dissenting).
Defendants appeal as of right from a judgment upholding the constitutionality of Ordinance No. 16 of the Town of Hempstead, and enjoining the defendants from operating a sand and gravel pit until a permit has been issued by the Town of Hempstead, and certain violations of the *106 said ordinance have been corrected. The defendant, Goldblatt, is the owner of 38 acres of land located in the Town of Hemp-stead, which is the property involved in this litigation. The other defendant, Builders Sand and Gravel C'orp., is the operator of the business of excavating’ and selling the sand and gravel taken from the land. The property was purchased by Mr. Goldblatt’s father in 1927 and the excavation and sale of sand and gravel has been carried on since 1927. Within a year after operations began, the excavation had gone below water level and an artificial lake was created, averaging now approximately 25 feet in depth.
The entire premises of defendant Goldblatt are surrounded by 7,000 lineal feet of a 6-foot chain-link fence, topped by 3 strands of barbed wire. The fence was built and the gravel pit was operated in accordance with a 1945 ordinance and is admittedly in conformity therewith.
When the 38 acres of land owned by defendant Goldblatt were purchased and dredging operations began in 1927, the surrounding property was mainly farm land. The first provision for residential zoning of property was enacted in January, 1930. Thereafter and during the time defendants continued their dredging operations, the surrounding area became heavily populated. Thus, defendants did not bring their business into a residential area; defendants’ neighbors voluntarily came into this area where defendants’ operations and the artificially created lake were evident and obvious.
In 1956 the plaintiff town brought to trial its first legal proceeding to terminate the defendants’ dredging operations. That was a suit in Supreme Court, Nassau County, to restrain defendants from operating on the theory that defendants’ dredging operations constituted a violation of the Zoning Ordinance of the Town of Hempstead.
It was held that defendants had a legal right, consisting of a prior nonconforming use, to continue their excavation and operations under water on their ‘ ‘ entire premises * * * notwithstanding any Ordinances of the plaintiff ’ ’. The opinion of Justice Hill states: “ I find that the defendants are now and have been since 1927 conducting a prior nonconforming use on the premises, and that they have made such a substantial investment in improvements in the business to warrant a con *107 tinuance of this nonconforming use, see People v. Miller, 304 N. Y. 105; Town of Somers v. Camarco, 308 N. Y. 537.” No appeal was taken from the judgment entered upon the opinion of Mr. Justice Hill.
In 1958 Ordinance No. 16 was amended to prohibit all excavation below water level and to require the filling in of excavations previously made. Defendants now conduct the only sand and gravel business by dredging in Hempstead and it would appear that the ordinance was aimed directly at them.
In the 1956 litigation before Mr. Justice Hill, the town did not bring into litigation or rely on the provisions of the original 1945 Ordinance No. 16 for the reason that defendants’ operations complied with the regulatory provisions of the 1945 ordinance. It was not until the 1958 amendment of the ordinance that excavation below ground water level was prohibited.
The plaintiff township would distinguish an invalid retroactive zoning ordinance attempting to eliminate a ‘ ‘ nonconforming use ” (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553; Town of Somers v. Comarco, 308 N. Y. 537) from a “ regulatory ” ordinance which regulates the nonconforming use in the interest of public health and safety (Queenside Hills Co. v. Saxl, 328 U. S. 80; Matter of Engelsher v. Jacobs, 5 N Y 2d 370, cert. denied 360 U. S. 902). Both lower courts applied this distinction and held that the 1958 ordinance was a proper police power regulation designed to abate a dangerous situation.
While in a proper ease the distinction is a valid one, the record here indicates a systematic attempt to force the defendants out of business. The decision below has that practical effect. A condition of continuing the business requires defendants to fill the existing excavation at a cost in excess of $1,000,000. If this is not done, the ordinance purports to render defendants criminally liable for separate misdemeanors during each week until the pit is refilled. This particular portion of the ordinance, we may note, in addition to other objectionable features, serves, in effect, to render criminal an act “ innocent when done ” (People v. Oliver, 1 N Y 2d 152, 158). In consequence it may well be regarded as oppressive, and condemned by the constitutional prohibition against ex post facto laws (U. S. Const., art. I, § 10). In other words, under the challenged ordinance as it now stands, defendants are susceptible of crim *108 inal prosecution for not filling in the excavation (to the extent of approximately 1,000,000 cubic yards) lawfully created over the years prior to enactment of the ordinance, by means of the lawful removal of sand, and in the course of prosecuting a lawful business.
A reading of the Saxl and Engelsher cases (supra) cited by the respondent town indicates that they were truly mere ‘ ‘ regulatory ’ ’ ordinances which did not operate to confiscate and prohibit absolutely. Since Ordinance No. 16 virtually eliminates the nonconforming use and prohibits unconditionally and finally all underwater dredging previously conducted on 20 acres of defendants’ property, the theory of “ regulation ” cannot reasonably be sustained. The following observation of Mr. Justice Holmes in Pennsylvania Coal Co. v. Mahon (260 U. S. 393, 415-416) is applicable: “ The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.”
Similar language was used by this court in Arverne Bay Constr. Co. v. Thatcher (278 N. Y. 222, 231).
In People v. Calvar Corp. (286 N. Y. 419) this court stated (p. 421): “Forceful argument may be made that a general and complete prohibition of such use of property, even where such use might be permitted without causing substantial injury to the community, would be unreasonable. That question must await determination until it arises. We express no opinion upon it. In this case there has been no such complete and absolute prohibition.”
We think that this case falls within the ambit of the question left unanswered in the Calvar case.
Furthermore, in the Harbison case (4 N Y 2d 553, supra), it was held that the value of the investment in the property was relevant in determining the validity of an attempted elimination of a nonconforming use. In this case, defendants attempted to show the value of their investment but the trial court ruled against the introduction of such evidence. Such evidence was important and admissible under the majority ruling in the *109 Harbison case and also under the doctrine in People v. Miller (304 N. Y. 105, 108, 109) where this court held that unless the “ loss to the owner ” of a prior nonconforming use is “ slight and insubstantial ’ ’ it could not be wiped out by an ordinance (see, also, Town of Somers v. Camarco, 308 N. Y. 537, 539, 540, supra). The record does indicate, however, the substantial nature of defendants’ business.
In Trio Distr. Corp. v. City of Albany (2 N Y 2d 690, 696), we held that an ordinance was invalid “ prohibiting the conduct of an occupation under the guise of regulation.”
Upon the argument the attorney for plaintiff-respondent said in answer to questioning that he does not contend that this condition amounts to a nuisance, but that excavations of this kind are subject to regulation by ordinance under the police power. Of course they are, in the interest of public health and safety, but an examination of the clauses in the 1958 amendments to this Ordinance No. 16 supports the contention that it was directed at this single operation and designed to accomplish what the 1956 lawsuit had failed to do, viz., to destroy a lawful pre-existing use under the Town Zoning Ordinance. The object is not to promote public health or safety, but to end the operation of this business under the guise of regulation.
The very circumstance that this gravel pit was conducted in conformity with the 1945 regulatory ordinance was exploited by the town to trap defendants by changing the permitted grade of the declining angle of the slope of the pit from 45 to 30 degrees, and by requiring a concrete curb beneath the 7,000 feet of fence which was built according to the 1945 requirement. No object in the installation of this concrete curbing has been shown except that it would put defendants to the expense of removing the fence, laying the concrete and constructing a new fence. This, along with the prohibition of excavation below water level or more than 10 feet below the highway level, and the extension from 10 to 20 feet of the permitted distance between the excavation and the property line and the retrospective requirement of refilling all that had been excavated since 1927, shows that the purpose was expropriation rather than regulation.
In 1959 the United States Bureau of Mines statistics show that the business of excavating and selling sand and gravel in *110 the country totalled more than $700,000,000 and more than $27,600,000 in New York State alone. Much must have been spent on Long Island where, respondent itself asserts, building operations have proceeded at a high rate in the Town of Hempstead. There is nothing inherently dangerous or evil about this business, nor about excavating under water, which, especially in this area, has been a vital necessity. The minutes of the trial before Justice Hill, in evidence here, show that the gross annual business of defendants was in excess of $200,000 and that their capital investment was approximately $241,000. All of this is important as indicating that this is a lawful business which the “ Declaration of Policy ” in the ordinance says it was enacted to suppress. The regulatory provisions of the ordinance adopted in 1945, it is virtually conceded, were adequate to furnish protection against whatever hazards were created by the sand and gravel pits. That appears to have been drawn in substantially the same form as in the ease of towns generally in the County of Nassau. Nor does the circumstance alter the case that there are 18 more acres in the tract which the photographs show to be entirely occupied by the machinery used in the operation of the sand and gravel pit. Even if the land on which the machinery is located could be utilized for excavation, it would not help the ordinance which unlawfully prevents the operation of a lawful business on the 20 acres. It may be noted that, although the trial court excluded evidence of the value of the installations, the assessed valuation is in evidence as $66,000.
In endeavoring to close this pit the town says much about, the safety of children. They are protected by the regulatory provision of the ordinance as it was enacted in 1945 according to a pattern prevalent throughout the county. The one drowning mentioned in the entire history of this pit, which is not shown by the record but does appear, we are told, from the police reports, happened in 1944 before the enactment of any ordinance requiring a fence to surround the excavation. The evidence indicates the existence of ponds, drainage basins, sumps and other conditions of open water that have gone unmolested which appear to be more dangerous than the subject property because not surrounded by fences. The presence of violations of the ordinance elsewhere would not, of course, prevent its enforcement, but it confirms that the object here was not regulation but *111 prohibition of the conduct of this business. There are some hazards in the operation of any legitimate business. Automobiles are not kept off the highways for the reason that children as well as adults are occasionally injured or killed by them.
The judgment appealed from should be reversed and the complaint dismissed, with costs in all courts.
Chief Judge Desmond and Judges Dye and Fttld concur with Judge Burke ; Judge Van Voorhis dissents in an opinion in which Judges Froessel and Foster concur.
Judgment affirmed.