**WORLD ELECTRONICS, INC., a Florida corporation, Plaintiff,**

v.

**METROPOLITAN DADE COUNTY, FLORIDA, Defendant.**

No. 89–2569–Civ.

United States District Court, S.D. Florida.

Sept. 20, 1990.

Ira M. Elegant, Miami, Fla., Bruce Rogow, Fort Lauderdale, Fla., for plaintiff.

Robert A. Ginsburg, County Atty., Miami, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

JAMES LAWRENCE KING, Chief Judge.

THIS ACTION was tried before the court. On the evidence presented, the court finds as follows:

(a) This is a suit brought by World Electronics, Inc., a Florida corporation, as the plaintiff, against Metropolitan Dade County, Florida, as the defendant, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, for declaratory and injunctive relief. Plaintiff seeks to declare Dade County Ordinance 89–19 unconstitutional as it prohibits the use of wireless fire alarm systems and is not rationally related to any legitimate state interest.

(b) The basis of federal jurisdiction is 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, 1331, and 1343(a)(3).

(c) The plaintiff, World Electronics, Inc., is a corporation organized and existing under the laws of the State of Florida. It manufactures and markets wireless fire alarm systems throughout the United States. Its principal place of business is in Coral Springs, Broward County, Florida.

(d) Metropolitan Dade County, Florida, the defendant is a governmental entity organized and existing pursuant to Florida law.

(e) On March 21, 1989 the defendant Metropolitan Dade County adopted Ordinance 89–19 which amended subsection 3808.1 of the South Florida Building Code ("SFBC") thereby prohibiting the use of fire alarm systems that have been known in this case and designated as "wireless systems".

(f) Wireless fire alarm systems, such as those manufactured and sold by the Plain-

tiff, World Electronics, Inc., were permitted to be installed under the provisions of the SFBC until March 21, 1989, provided they met the requirements of approval by Underwriters Laboratories, Inc. ("U.L.") and approval of the National Fire Protection Association ("NFPA").

(g) Ordinance No. 89–19 was not a "staff-generated" ordinance. It apparently was generated by Commissioner Larry Hawkins. There is no evidence in this record suggesting that the Dade County Fire Chief or Dade County Fire Marshal conducted any study or compiled any data suggesting a need for the ordinance. Indeed the contrary has been established in this record as far as the fire professional personnel are concerned.

(h) Wireless fire alarm systems are approved and accepted by the NFPA and listed by U.L.

(i) These wireless systems provide fire detection by utilizing batteries as a primary power source for the detecting or initiating devices such as smoke detectors. The initiating devices in the wireless system relay the signal from the device to the main control panel via radio transmission. Once the signal reaches the panel, as Dade County Fire Marshal Brennan testified during the County Commission hearings, the hard wired electrical portion of the "wireless" fire alarm system takes over and functions just as a hard wired system would, once the signal is received. This is so since the control panel and various components of the system are "hard-wired" utilizing electrical supply sources.

(j) The use of this technology has been approved by the State of Florida as a proper fire detection system throughout the State of Florida. See, Section 633.01, *et seq.*, Florida Statutes (1989) and FAC Chapter 4A.

(k) World Electronics, Inc. manufactures and sells wireless fire alarm systems. The plaintiff has sold and installed the system in hotels, motels, office buildings, apartment buildings, schools, courthouses, state and municipal buildings, hospitals and convalescent homes.

(*l*) Among the clients utilizing World Electronics technology are International Business Machines, Travelers Insurance Company, Yale University, Los Alamos Laboratories, Disney World, the United States Navy and six (6) hotels or high-rise buildings used as living accommodations in Dade County, Florida.

(m) The plaintiff, World Electronics, Inc., has spent millions of dollars according to the testimony of the president of the company, Mr. Philip Barrett, in his presentation to the Dade County Commission on March 21, 1989 in research and development of the wireless system that is produced by his company.

(n) The amending ordinance 89–19 was opposed at the County Commission meeting by Chief Colonel Duke, of the City of Miami Fire Department; Mrs. Trudy Burton, representing the Building Association of South Florida; Mr. Barrett, the president of the plaintiff company, and was supported by three individuals, including Mr. Karl Greer, who are either in the alarm installation business or who are electrical contractors who install hard wired systems.

(*o*) Dade County Fire Marshal Brennan and Chief Perry of the Dade County Fire Department related to the County Commission at the time the ordinance was under consideration that they had contacted and received comments from each of the six (6) hotels or large living facilities in Dade County which utilized the wireless systems. The report received reflected that none of the six (6) apartment complexes or hotels had any problems with the wireless systems.

(p) Fire Marshal Brennan reported that the Alexander Hotel said it was "a great system". The Bal Moral said it had no problems and it was "thoroughly satisfied". The Carriage House said it was "a great system, no problems". Harbor House Apartments said it was satisfied except the batteries did not last as long as they would like. The Jockey Club said it was "an outstanding system"; they were very pleased with it. They stated they would like the batteries to last longer, but they were very pleased with the system.

The same with the Bal Moral Hotel "very pleased, no problems".

(q) The opposition witnesses to the ordinance, at the time of the hearing before the County Commission, generally indicated: (a) that the hard-wired system was the preferable system; and (b) that there were problems, in their opinion, with the wireless system, but this was not based upon any careful analysis or study of the wireless system.

(r) Analyzing the testimony of the various witnesses who have appeared here during the four (4) days of this trial, the Court finds Chief Colonel Duke to be a very credible witness. Chief Duke is Fire Chief of the City of Miami with twenty-six (26) years of experience as a professional fire fighter in the City of Miami. For the past four (4) years he has been Fire Chief. His opinion, the Court believes, is based upon the careful consideration of the relevant evidence on the safety of the wireless system. Chief Duke's opinion was that he thinks the system is another good option that should be available to builders and buyers.

(s) Dennis Buddy Dewar was a very credible witness. Mr. Dewar was State Fire Marshal for the State of Florida for seven (7) years and he served as Director and Assistant Director of the Division of the State Fire Marshal, which were very responsible positions with the State fire system. It was Mr. Dewar's opinion that the three (3) systems presently known and for which there are standards set under 72A, the hard-wired system, the wireless system and the fiber optic systems are all good fire detection systems. They each have problems or benefits that would cause a purchaser or builder to perhaps select one over the other. The hard-wired system (as he indicated) is subject to failure in electric storms and can be out for as much as forty-five (45) days. Mr. Dewar cited the example of the State of Florida Prison Facility in Lake City, Florida in this regard. It was Mr. Dewar's opinion that the plaintiff's wireless system should not be excluded from Dade County just because it is "wireless". He said there has been an embarrassing number of false alarms in the hard wired systems over the years, and he cited reasons for the possibility of failure in that system. However, he believes that it is a good system and should continue in use.

With respect to the wireless system, it was his opinion that the battery problem is one of the problems that is incident to the wireless system, but in his judgment full protection is offered by the low battery audible signal that emanates from the smoke detectors through the system to advise the monitors of the system or the users of the unit that the battery is becoming low.

By Code (NFPA 72A), according to Mr. Dewar, the low battery signal must emanate for seven (7) days with an audible signal each hour to indicate that the power is getting weak or low. He felt that this was not an impediment that should bar the plaintiff from producing or selling the system.

In Mr. Dewar's opinion, which the Court finds is entirely credible, and based upon the evidence, the plaintiff's system is "state of the art." The wireless system has the advantage of pinpointing exactly where the fire is. This is a better life safety feature than the hard wired system, where the fire can be pinpointed only in zones or is frequently pinpointed only in zones. It was his opinion, as an expert with considerable experience, that there is absolutely no reason to exclude the plaintiff's product.

(t) Mr. Robin Hale, the Fire Protection analyst for the City of Miami Beach, with considerable experience in fire protection and fire safety, opined that there is no reason to preclude the wireless system in Dade County. He felt that it was a good system and should be approved for use.

(u) All of the witnesses who testified failed to say in a single instant that the wireless system was a safety hazard to the users.

(v) The testimony of the defendant's witness, upon the conclusion of the plaintiff's case, reflected in the instance of Mr. Otto Kircheimer of Tri–City Electric Company,

and the installer of plaintiff's wireless system at the Alexander Hotel, was that the batteries tended to wear out within six (6) to eight (8) months.

He testified that this, in his judgment, created a problem that would make the hard wired system a preferred system over the wireless fire detection system. His only experience with the wireless system was the installation at the Alexander Hotel. He has had fifteen (15) years as a hard wire installer of smoke detection systems in the Dade County area. His conclusory opinion was that they had problems at the Alexander Hotel in the installation of the wireless system, but that all the problems got resolved and as far as he knew the system was satisfactory to the Alexander Hotel at this time.[1]

(w) Mr. Jose Frieder, a smoke detector alarm installer, testified for the defendant. He had experience with installing the wireless system at the Bal Moral Hotel. He indicated that the batteries tend to wear out and had to be changed to make the system function properly. The substance of his testimony was that he was satisfied with the plaintiff's system on an over-all basis. Provided it was maintained properly, it was a satisfactory system. He knew of no reason why it should be not used by a person wishing to protect himself or herself from the dangers of a fire. He did not see it as being any threat to life or safety.

(x) Brainard Dorris, Fire Chief of the City of Miami Beach for the past five (5) years, had a concern about wireless systems, but the systems had tested out and did work. He had no concern about the batteries. He testified there might be a maintenance problem, but there are maintenance problems in any system that is known and used in the fire detection field by professional fire safety experts. He has experienced no problems with the wireless system in the City of Miami Beach. He said there are three (3) wireless systems in that city and he was not of the opinion that there was any danger to persons.

(y) John Pistorino, a Dade County consultant, knew of nothing in the plaintiff's system that was injurious to the health or safety of the people of Dade County. His opinions indicated that he prefers the hard wired systems. He thought them to be a better system than the wireless system. The Court is not here to make a determination as to which system is best, but simply whether or not there is a rational basis for the adoption of the ordinance and whether or not the ordinance is Constitutional.

(z) All of the witnesses discussed thus far, the Court finds credible and believable.

(aa) Mr. Robert Porlick, another witness for the defendant Metropolitan Dade County, has been a consulting electrical engineer for many years. He has considerable experience in the field of electrical engineering and consulting work and has spent approximately 116 hours or more on research in connection with his consulting status as an expert employed by the County on this case. Regrettably, the Court feels he is a very fine person and not reflecting on him individually, the Court cannot accept or find his opinions credible. His opinion was that the hard wired system was preferable and better than the wireless. The wireless system was not as good but it was better than nothing at all.

Mr. Porlick did not know of any reason why wireless should be considered a threat to the health and safety of any of the people of Dade County. However, he prefers the hard wired system.

Mr. Porlick based his opinion on what the Court finds to be several mistaken assumptions in NFPA 72A and in the material that he had considered, upon which he formed the basis of his opinion. Two examples are his testimony that the wireless system had up to four (4) hours to send a signal alerting the monitors of the system (or the users of the system) to some tampering malfunction, and his conclusion was that, if the system or if the batteries did not last one year, the system was not in compliance

---

1. The Alexander Hotel replied to Fire Chief Brennan that the system was very satisfactory and Chief Brennan so testified at the County Commission hearing.

with the SFBC as it existed prior to March 21, 1989.

The Court did not accept his opinion for the reasons stated. There is no suggestion that he was anything other than a very honest and decent man. He had some mistaken assumptions. He was very sincere and there is no reflection intended on his credibility as a person.

(bb) The matter of radio frequency interference was put to rest in the rebuttal testimony of Mr. Dewar who testified that the use of a restricted frequency eliminated the concerns that any reasonable fire protection safety expert would have regarding the wireless system being able to transmit a warning signal upon detection of smoke. He further testified that Section 4–2.1.3 NFPA allows ninety seconds for either the wireless system or the hard wired system to initiate an alarm and have alarm verifications on all smoke detection devices.

## CONCLUSIONS OF LAW

1. The legal issues presented for resolution by this court are determined adversely to the defendant County and in favor of the plaintiff.

▬ 2. Plaintiff has addressed *Deweese v. Town of Palm Beach*, 812 F.2d 1365 (11th Cir.1987) and distinguished *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096 (1946). The question of lack of equal protection, as set forth by Justice Douglas in *Queenside,* is found on the actual existence of invidious discrimination. It cannot be based on a mere anticipated possibility of discrimination between like or identical classes of persons or properties.

3. In *Queenside,* the Court dealt with a legislative enactment which required the installation of automatic wet pipe sprinkler systems, a far cry from what we have in this case where there is a "total taxing," a total bar of the wireless system throughout Dade County.

▬ 4. The court finds as a matter of law that Ordinance 89–19 amending subsection 3803.1 of the SFBC is arbitrary, capricious, irrational, and bears no rational or reasonable relationship to any legitimate government purpose.

5. The effect of the passage of the ordinance was not to protect the citizens of Dade County against a fire detection system that was shown in any reasonable or rational manner to be hazardous to the citizens of Dade County.

6. The testimony is clear, and the court finds in this case that the wireless system is not a danger or hazard to any greater degree than the hard wired system that has been approved by the County and throughout the state and has been in use for some considerable time.

7. Both systems meet acceptable standards of professional fire safety of recognized governmental and private experts in the field of fire prevention and safety throughout the state. To preclude one system from use in this community is arbitrary and discriminatory.

8. It appears the ordinance was passed to protect the interests of the hard wired electrical contractors in Dade County to the detriment of the manufacturers and users of the wireless technology.

9. The ordinance violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution and deprives the plaintiff of its rights guaranteed by these Constitutional provisions.

DONE AND ORDERED.