**Vernon CROWDER and Stephanie Good, Plaintiffs,**

v.

**Yukio KITAGAWA, Chairman, Board of Agriculture, State of Hawaii; Calvin Lum, Administrator, Department of Agriculture, State of Hawaii; Department of Agriculture, State of Hawaii; State of Hawaii; John Does 1 Through 10, inclusive, and Doe Government Agencies 1 Through 10, inclusive, Defendants.**

Civ. No. 93–00213 DAE.

United States District Court, D. Hawaii.

Feb. 1, 1994.

Michael A. Lilly, Ning Lilly & Jones, Honolulu, HI, for plaintiffs.

Sonia Faust, Heidi M. Rian, Robert A. Marks, Kathleen S.Y. Ho, Office of the Attorney General–State of Hawaii, Honolulu, HI, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard defendants' motion on January 24, 1994. Michael A. Lilly, Esq. appeared on behalf of plaintiffs; Deputy Attorney General Heidi M. Rian appeared on behalf of defendants. After reviewing the motion and the supporting and opposing memoranda, and hearing oral argument from counsel, the court GRANTS defendants' motion for summary judgment.

### BACKGROUND

This is a class action, brought on behalf of a class of Hawaii resident guide dog owners and another class of non-resident guide dog owners, that seeks to establish an exemption for guide dogs from Hawaii's animal quarantine laws which require the 120–day quarantine of animals coming into the state from rabies-endemic areas. The quarantine was established to prevent the spread of rabies to Hawaii, which remains one of the few places in the world that are free from that disease. Plaintiffs Crowder and Good, who are both blind, assert that their travel to and from Hawaii has been restricted because of Hawaii's quarantine. They claim that the quarantine law violates the class members' constitutional rights to equal protection, to substantive due process, and to travel under the Fourteenth Amendment of the United States Constitution, and that the law also violates the Americans with Disabilities Act ("ADA"). The plaintiffs propose that, for their dogs at least, the quarantine period should be replaced with vaccinations and with tests to measure antibody levels in their dogs' blood.

Defendants argue that Hawaii has an extremely strong interest in remaining rabies-free, and that, pursuant to its police powers and obligation to protect the health and safety of its citizens, the state has applied its quarantine laws evenhandedly to all entering dogs, cats, and other carnivores, regardless of who the owners may be. Further, defendants argue that the Hawaii legislature has already considered and rejected plaintiffs' proposed alternatives to the quarantine, and that this court should defer to that body's findings. Accordingly, defendants request that this court grant summary judgment in their favor.

### STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The evidence and inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1362 (9th Cir.1985). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*

*Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

### I. Applicable Statutory Law and Administrative Rules

The Department of Agriculture of the State of Hawaii is granted authority to establish rules for the quarantine of animals by Section 142–2, Hawaii Revised Statutes.

Haw.Rev.Stat. § 142–2 provides, in relevant part:

> Subject to chapter 91 the department of agriculture may make and amend rules for the inspection, quarantine, disinfection, or destruction, either upon introduction into the state or at any time or place within the State, of animals and the premises and effects used in connection with the animals....

Pursuant to this section, the department has promulgated rules for dealing with animal diseases and quarantine. Section 4–29–9 of the Hawaii Administrative Rules establishes a 120–day quarantine in a quarantine station for dogs, cats, and other carnivores entering Hawaii from the United States mainland or from any other country that has not been designated by the Board of Agriculture as rabies-free. The purpose of the rule is to "prevent the introduction of rabies." Haw.Admin.R. § 4–29–9(a).

Under Haw.Admin.R. §§ 4–29–9 and 4–29–10, the only animals completely exempted from the 120–day quarantine requirement are those coming from designated rabies-free areas by means of transport meeting certain stringent requirements. While the rules do not exempt guide dogs, they do make some accommodation for guide dogs and their owners. For example, Haw.Admin.R. § 4–29–15(a) provides that any disabled person seeking to import a certified guide dog may, upon written request, be housed at no charge in an apartment at the quarantine station during the period of the dog's confinement. The rules also provide that, after an initial ten-day observation period, the guide dog may train freely on station grounds with its owner. *See* Haw.Admin.R. §§ 4–29–15(b)(1)–(2). The guide dog may also train with its owner off the station grounds for up to four hours a day, three days a week, in the company of a department inspector. *See* Haw.Admin.R. § 4–29–15(b)(3). During such off-station training sessions, however, the guide dog may have no contact with other animals or humans. *See* Haw.Admin.R. § 4–29–15(b)(5).

### II. Plaintiffs' Claims of Injury

Plaintiffs argue that the 120–day quarantine as applied to guide dogs is unconstitutional in that it infringes upon their right to travel, their right to equal protection, and their right to fundamental due process. Plaintiffs also contend that the quarantine discriminates against persons with disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA").

Defendants argue that Hawaii has the authority, under its police powers, to impose a reasonable quarantine on incoming animals to preserve the health and safety of its populace and animals. The United States Supreme Court has held that protection of health and safety is one of the traditional functions of the police power, and that courts should leave to legislatures the means by which it is implemented. *See Queenside Hills Realty Co., Inc. v. Saxl,* 328 U.S. 80, 82–83, 66 S.Ct. 850, 851–52, 90 L.Ed. 1096 (1946). In *Queenside,* the Court upheld new statutory requirements for sprinkler systems in lodging houses, despite a lodging house owner's objection that the requirements violated both the equal protection and due process clauses of the fourteenth amendment. Regarding the due process argument, the Court stated:

We are not concerned with the wisdom of this legislation or the need for it. Protection of the safety of persons is one of the traditional uses of the police power of the States. Experts may differ as to the most appropriate way of dealing with fire hazards in lodging houses.... But the legislature may choose not to take the chance that human life will be lost in lodging house fires and adopt the most conservative course which science and engineering offer. It is for the legislature to decide what regulations are needed to reduce fire hazards to the minimum.

*Id.* (citation omitted).

Subsequently in *Goldblatt v. Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), the United States Supreme Court considered whether the enactment of an ordinance regulating dredging and pit excavating on property within the Town of Hempstead was a proper exercise of the town's police powers. The plaintiff in that case engaged in such operations prior to the enactment of the ordinance and claimed that it prevented plaintiff from continuing business which resulted in the taking of property without due process of law. The trial court held that the ordinance was a valid exercise of the town's police power, and the New York Court of Appeals affirmed *Id.* at 590–91, 82 S.Ct. at 987–98. The Court, in affirming the decision of the lower court, stated:

The question, therefore, narrows to whether the prohibition of further excavation below the water table is a valid exercise of the town's police power. The term "police power" connotes the time-tested conceptional limit of public encroachment upon private interests. Except for the substitution of the familiar standard of "reasonableness," this Court has generally refrained from announcing any specific criteria. The classic statement of the rule in *Lawton v. Steele*, 152 U.S. 133, 137 [14 S.Ct. 499, 501, 38 L.Ed. 385] (1894), is still valid today:

'To justify the State in ... interposing its authority in behalf of the public, it must appear, first, that the interests of the public ... require such interference; and, second, that the means are reason-

ably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.'

Even this rule is not applied with strict precision, for this Court has often said that "debatable questions as to reasonableness are not for the courts but for the legislature...." *E.g., Sproles v. Binford*, 286 U.S. 374, 388, [52 S.Ct. 581, 584, 76 L.Ed. 1167] (1932).

*Id.* at 594–95, 82 S.Ct. at 990–91.

A. Plaintiffs' Right to Travel

Plaintiffs assert that Hawaii has arbitrarily and capriciously established scientifically irrational quarantine rules which unconstitutionally deprive blind persons of their right to interstate travel. The United States Supreme Court has stated that "[t]he constitutional right to travel ... occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757, 86 S.Ct. 1170, 1172, 16 L.Ed.2d 239 (1966). Plaintiffs contend that because the right to travel is "fundamental," a state may only impede or restrict this right when a compelling governmental interest is promoted. Plaintiffs rely on *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), in which the Supreme Court stated:

[I]n moving from State to State ... appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional.

*Id.* at 634, 89 S.Ct. at 1330 (emphasis in the original). Subsequent to its decision in *Shapiro*, however, the Supreme Court has focussed on what exactly constitutes a "penalty" on the exercise of the right to travel which would warrant the finding of a "compelling" state interest. In *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 256–57, 94 S.Ct. 1076, 1081–82, 39 L.Ed.2d 306 (1974), the Court recognized that the amount of impact required to give rise to the compelling-state-interest test was ambiguous. Supreme Court cases that have invalidated

state requirements imposing a potential "cost" on interstate migration have done so because the price of interstate travel amounted to a denial of a significant interest: the right to vote, a fundamental political right, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); the right to "the very means to subsist—food, shelter, and other necessities of life," *Shapiro,* 394 U.S. at 627, 89 S.Ct. at 1327; and the right to non-emergency medical care, *Memorial Hospital,* 415 U.S. at 259, 94 S.Ct. at 1082. The Court has declined to strike down an Iowa state law requiring a one-year waiting period for new residents to obtain access to the state's divorce courts. *See Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Similarly, the Court has refused to strike down state statutes requiring one year of residence as a condition to lower tuition at state institutions of higher education. *See Vlandis v. Kline,* 412 U.S. 441, 452–53 n. 9, 93 S.Ct. 2230, 2236–37 n. 9, 37 L.Ed.2d 63 (1973).

Defendants argue that, even if the Hawaii's quarantine restrictions indirectly hamper the interstate travel of guide dog users, these restrictions do not amount to significant deprivations of anything akin to the right to vote, the right to the basic necessities of life, or the right to non-emergency medical care. Under Hawaii's administrative regime, guide dog users are free to enter the state. If they choose to bring their dogs, they may live with the dogs, free of charge, at the Animal Quarantine Station and may train off station grounds for up to twelve hours per week. They, of course, may also leave the grounds without their dogs at any time. Thus, defendants argue, the quarantine laws do not violate the plaintiffs' right to travel interstate. In addition, defendants assert that the quarantine affects newcomers to Hawaii in the same manner that it affects residents of the state. The Court of Appeals for the Ninth Circuit has stated that

> In contemporary decisions, the right to travel has typically been invoked in connection with the Equal Protection Clause: ... In each of these recent cases, the Court found that exercise of the right to travel was penalized because the challenged legislation disadvantaged newcom-

ers to the state vis-a-vis previous residents.

*Benson v. Arizona State Bd. of Dental Examiners,* 673 F.2d 272, 277 (9th Cir.1982) (citations omitted). Here, because all guide dogs are subject to the quarantine, regardless of the resident status of the dog's owner, the rule does not impermissibly disadvantage newcomers or visitors vis-a-vis long-term residents. According to the defendants, even if the 120–day confinement requirement is regarded as deterring interstate travel for members of the plaintiff classes, the requirement is not an impermissible restriction that would necessitate heightened scrutiny.

■ Having carefully considered the arguments and evidence proffered by both parties to this action, this court finds it unnecessary to determine whether the plaintiffs have been sufficiently "penalized" by the quarantine restrictions to require the defendants to show a compelling state interest for these regulations. The court so holds because, with regard to a right to travel analysis, the Hawaii quarantine requirements pass constitutional muster with or without the application of this higher level of scrutiny. Furthermore, plaintiffs do not dispute that Hawaii has a compelling interest in preventing the introduction into the state of rabies, a deadly disease to animals and humans alike. Instead, plaintiffs assert that Hawaii has not implemented the "least drastic means" of achieving this interest.

■ The United States Supreme Court has held that, where a fundamental constitutional right is implicated:

> It is not sufficient for the State to show that [the state statutes at issue] further a very substantial state interest. In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with "precision," ... and must be "tailored" to serve their legitimate objectives.... And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose

the way of greater interference. If it acts at all, it must choose "less drastic means."

*Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972) (citations omitted). Plaintiffs argue that, in order to meet its objective of preventing the introduction of rabies into its population through the least drastic means, the State of Hawaii must abandon its present quarantine regulations and adopt one of the following four plans:

1. "Quarantine Task Force Report Plan" as contained in "Study of the Animal Quarantine System; State of Hawaii; Interim Task Force Report to the 1990 State Legislature," attached as Exhibit "B" to Declaration of Dr. Charla Jones.

2. "George Beran Plan," attached as Exhibit C to Declaration of Dr. Charla Jones.

3. "Legislative Plan," attached as Exhibit "D" to Declaration of Dr. Charla Jones.

4. "WHO Plan," attached as Exhibit "E" to Declaration of Dr. Charla Jones.

These plans each propose alternatives to the present quarantine system, including vaccines, antibody titer-based systems, and microchip implantation. Plaintiffs contend that since there are more effective and less intrusive means to prevent rabies, quarantine does not serve a compelling state interest. Plaintiffs have provided the declaration of Dr. Charla Jones, a rabies expert who advocates the implementation of alternative rabies-prevention schemes to replace Hawaii's current quarantine regulations. The defendants, on the other hand, have provided the declaration of Calvin Lum, the Administrator of the Animal Industry Division of Hawaii's Department of Agriculture. In his declaration, Lum articulates the continuing need for the quarantine system and refutes Dr. Jones' proposed alternatives. Plaintiffs indicate that this very difference of expert opinion as to the efficacy of the quarantine system creates a genuine issue of material fact which prevents this court from granting defendants' motion for summary judgment.

What plaintiffs fail to acknowledge in their papers, however, is that the Hawaii legislature has recently undergone a thorough review of the present quarantine regulations in light of the proposed alternatives. During the 1993 session, two bills were introduced which proposed an exemption for resident guide dogs who leave the state and return. *See* H.B. No. 683–93 and S.B. 1268–93, attached as Dec. Exhibits "A" and "B" to Declaration of Heidi M. Rian. Two other bills proposed abolition of the current quarantine for all incoming animals that could meet certain requirements. *See* H.B. No. 682–93 and S.B. 1264–93, attached as Dec. Exhibits "C" and "D" to Declaration of Heidi M. Rian. In all four bills, the requirements for gaining the exemption included vaccination, microchip implantation, and rabies virus antibody titers: measures identical to those which the plaintiffs now propose. During the legislative hearings on these bills, numerous detailed reports, letters, and testimonies were submitted, amounting to a thorough record of expert opinion advocating both for and against their passage. *See* Dec. Exhibits "A" through "E," attached to Declaration of Heidi M. Rian. Significantly, none of these proposed bills passed the Hawaii legislature.

If only one thing can be ascertained from the voluminous legislative record on the quarantine issue, it is that qualified experts strongly disagree as to the efficacy of implementing plans which the plaintiffs would have this court advocate as "less drastic means" of achieving the state's interest in remaining rabies-free. The plaintiffs' preference for their proposed plans, which the Hawaii legislature itself has considered fully and rejected, gives this court no grounds to "sit as a 'superlegislature to weigh the wisdom of legislation,'" *Ferguson v. Skrupa,* 372 U.S. 726, 731, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963) (citation omitted), particularly since the question of the best or least drastic rabies-prevention system is "at least debatable." *Minnesota v. Clover Leaf Creamery,* 449 U.S. 456, 469, 101 S.Ct. 715, 726, 66 L.Ed.2d 659 (1981) (quoting *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938)).

Even assuming, *arguendo,* that the state must meet the stricter scrutiny of a compelling-state-interest review, there is no dispute that Hawaii has such an interest in remaining rabies-free. And, against the backdrop of conflicting scientific opinions on the relative merits of the quarantine and the proposed alternatives, the court finds that the current quarantine system is "suitably tailored" to serve this compelling interest. Thus the current quarantine regulations do not unconstitutionally deprive the plaintiffs of their right to travel.

### B. Plaintiffs' Right to Equal Protection

Plaintiffs assert that the Hawaii quarantine arbitrarily and capriciously creates two classifications of citizens: the blind, who cannot travel without their guide dogs, and the sighted, whose right to travel is unaffected by the quarantine. Plaintiffs maintain that such a classification deprives blind people of their right to equal protection.

 The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). When presented with an equal protection claim, a court should first determine what level of review is appropriate. *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 906 n. 6, 106 S.Ct. 2317, 2322 n. 6, 90 L.Ed.2d 899 (1986). An ordinary classification is upheld if it is rationally related to a legitimate government interest. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). When the classification involves a fundamental constitutional right, however, it is subject to "heightened scrutiny." The Supreme Court has stated:

Thus we have treated as presumptively invidious those classifications that disadvantage a "suspect class," or that impinge upon the exercise of a "fundamental right."

*Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982).

As discussed above, plaintiffs assert that the quarantine regulations at issue violate their fundamental right to interstate travel. In addition, plaintiffs also assert that persons who are blind are members of a suspect class. In support of this contention, plaintiffs cite section 12101(a)(7) of the ADA:

[I]ndividuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society.

42 U.S.C. § 12101(a)(7) (1993).

Defendants argue, however, that Hawaii's quarantine requirements apply to all incoming carnivores from rabies-endemic areas, and that, to the extent that the rules create any classifications among owners after their dogs' arrival into quarantine, they give guide dog users special benefits available to no one else: free housing on the station grounds and off-station training opportunities. Defendants further argue that the Supreme Court has not applied a heightened level of scrutiny to cases involving visually impaired individuals. Section 12133 of the ADA adopts the remedies and rights of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) as those that shall apply to Title II of the ADA. Section 504, defendants assert, has always been interpreted as requiring only "reasonable modifications" in programs. Section 12131 of the ADA speaks only of "reasonable modifications to rules, policies, or practices."

This court need not decide whether, for equal protection analysis, a classification of visually-impaired individuals is subject to a higher level of scrutiny, or whether, as discussed above, the state has sufficiently "penalized" plaintiffs' fundamental right to interstate travel to require a showing of "compelling" state interest for creating such a classification. Because the outcome under either the "rational basis" or "strict scrutiny" analyses is the same in this case, the court will assume, for purposes of plaintiffs' fourteenth amendment claims, that a level of strict scrutiny applies.

Plaintiffs contend that this court must strictly scrutinize Hawaii's actions to ensure that they are "suitably tailored to serve a compelling state interest." *Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254. Plaintiffs argue that, because the Department of Agriculture allows quarantine exemptions for animals other than guide dogs, the regulations violate the rights of the blind. Under Haw.Admin.R. § 4–29–13(c)(2), performing animals are allowed to leave the animal quarantine station after an initial 10–day observation period if all of the following conditions are met:

(1) the animals are brought into Hawaii for the sole purpose of performing

(2) the animals leave the quarantine only at times that are specified by permit

(3) the animals are accompanied and supervised by a Department of Agriculture inspector at all times

(4) the animals cannot come into contact with nonquarantined animals or humans at any time

(5) all costs incurred for supervision, quarantine, transportation, and care are paid by the owner of the performing animals.

In addition, Haw.Admin.R. § 4–29–13(d) provides that trained guard, scout, detector, or police dogs in quarantine may be temporarily removed from the quarantine station in the event of an emergency, if the dog is supervised by the commanding officer of the law enforcement unit involved, and any physical contact with humans or animals is reported immediately to the state veterinarian.

■ Plaintiffs argue that, given Hawaii's stated concern for preventing the spread of rabies, it is irrational to subject guide dogs to quarantine, while exempting circus animals and police dogs. This court disagrees with plaintiffs' construction of the administrative rules. The law does not exempt performing animals or police dogs from quarantine. Chapter 4–29 allows these animals to leave the quarantine station only temporarily, and only under very carefully controlled conditions. Moreover, guide dogs are given similar allowances under the quarantine regulations which no other animals enjoy: they are

allowed to train with their owners 12 hours per week anywhere the owners wish, as long as they are accompanied by a department inspector and do not come into contact with people or other animals. *See* Haw.Admin.R. § 4–29–14(b). The services of the inspector are free. The court does not see how other, more restrictive accommodations for other types of animals "violate the rights of the blind."

■ Plaintiffs have submitted no admissible evidence tending to show that Hawaii's quarantine rules pertaining to guide dogs are in any way arbitrary or irrational. Furthermore, as indicated above, the 1993 legislature considered the reasons for and against continuing to require a 120–day quarantine for guide dogs. It carefully weighed the extensive, detailed, and conflicting testimony of veterinarians and other experts, and refused to pass bills that would have exempted guide dogs from the quarantine. The equal protection clause does not require this court to replace its judgment for that of the Hawaii Legislature. This case cannot be equated to a circumstance in which a racially biased legislature passes laws specifically designed to infringe and impair the civil rights of a particular class of citizens. The present quarantine regulations, including the special provisions for guide dogs, circus animals, and police dogs, are suitably tailored to serve the compelling state interest in preventing the spread of rabies, and that plaintiffs have not been unconstitutionally deprived of their rights to equal protection under the Fourteenth Amendment.

C. Plaintiffs' Substantive Due Process Claim

■ Plaintiffs assert that Hawaii's quarantine regulations "irrationally deprive[ ] blind persons of their constitutional right to travel and thus substantive due process." Plaintiffs' opposition memorandum, at 26. The due process clause was designed to protect individuals from the arbitrary exercise of government power. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) (citation omitted). Under substantive due process principles, state action is invalid

when it "passes the bounds of reason and assumes the character of a merely arbitrary fiat." *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 389, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926) (citation omitted). As with equal protection, under substantive due process principles, legislatures are entitled to make their own judgments on the wisdom and utility of legislation in areas within the state's police powers:

> To make scientific precision a criterion of constitutional power would be to subject the State to an intolerable supervision hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure.... When the subject lies within the police power of the State, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome.

*Sproles v. Binford*, 286 U.S. 374, 388–89, 52 S.Ct. 581, 584–85, 76 L.Ed. 1167 (1932) (citations omitted).

■ In the instant case, the question of whether the quarantine restrictions constitute the best way of meeting the state's objective of preventing rabies is, at the very least, debatable. This court will not substitute its judgment for that of the legislature, where the record reflects the state has undertaken a careful and considered review of the issue. Moreover, defendants contend, and this court agrees, that Hawaii's quarantine law, as applied to guide dogs, comes nowhere near to being an arbitrary fiat. The court finds, therefore, that plaintiffs have not been deprived of their right to due process under the Constitution of the United States.

### D. Plaintiffs' Claim that the Quarantine Violates the ADA

■ Title II of the ADA prohibits discrimination against qualified individuals with disabilities on the basis of their disability:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (1993). Plaintiffs assert that the Hawaii quarantine discriminates against them by preventing their enjoyment of the "benefits of the services, programs, or activities" of the state in violation of the ADA. They argue that the ADA, in assuring non-discriminatory treatment, entitles them to rules which have a non-discriminatory effect. Further, plaintiffs assert that Hawaii is obligated to fulfill the ADA's reasonable accommodation requirement which, they state, is a "version of the least drastic means requirement for fundamental rights." Plaintiffs' opposition memorandum, at 29 n. 50. Title 28, section 35.130 of the Code of Federal Regulations requires "reasonable modifications" to avoid discrimination. Plaintiffs argue that compliance with one of their four alternative plans to replace the existing quarantine would meet this "reasonable accommodation" requirement.

Defendants contend that Hawaii's quarantine requirement does not discriminate against anyone on the basis of disability, and that a careful reading of the statute itself reveals that the ADA was not intended to apply to Hawaii's quarantine law. A visually impaired person who relies on a guide dog is clearly an individual with a disability under the ADA and its regulations. However, for the ADA to apply, the person must also be a *"qualified* individual with a disability." 42 U.S.C. § 12132 (1993) (emphasis added). A qualified person with a disability is defined as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2) (1993). Defendants argue that plaintiffs are not being denied the receipt of state services, and are not being

excluded from any programs or activities because of their disability. The quarantine requirement is a public health measure, and not a "service" or benefit furnished by the state to eligible participants. Nevertheless, plaintiffs maintain that they are indeed "qualified individuals" for the purposes of Title II of the ADA because they "are eligible for such benefits such [sic] as government-sponsored transportation services at the airports; the programs of the State-subsidized HVB; and the tourist-oriented educational initiatives." Plaintiffs' opposition memorandum, at 28 n. 47. Plaintiffs fail to provide any evidence, however, that they have been deprived of these "benefits" because of the state's animal quarantine requirements. Thus the members of the plaintiff classes do not appear to be "qualified individuals" under 42 U.S.C. § 12131(2).

■ Even if plaintiffs did fall under the definition of "qualified individuals" for the purposes of the ADA, the relevant federal regulations require only that "reasonable modifications" be made to avoid discrimination. Further, the regulation makes clear that modifications are not required if they would "fundamentally alter the nature of the service, program, or activity." 28 CFR § 35.130(b)(7) (1993). As discussed above, Hawaii has already made accommodations in the quarantine system to permit guide dog owners to train outside the quarantine station, and to live in apartments on the station itself at no charge. Plaintiffs assert that the only modification of the present system that would be "reasonable" would be the immediate replacement of the entire quarantine scheme with a system of vaccinations and other tests. The legislature has already thoroughly considered the plaintiffs' proposed alternatives and has rejected them. As noted earlier, it is the province of the legislature, and not this court, to assess the efficacy of public health measures against the risks they are designed to reduce, particularly when the questions are debatable and experts disagree as to the best solution to the problem. Thus the court find that, even

if plaintiffs were "qualified individuals" within the meaning of the ADA, there is no indication that the state has failed to provide reasonable modifications to the quarantine program on their behalf.

■ Finally, the court notes that in their supplemental memorandum, the plaintiffs assert that Title III of the ADA applies to the state quarantine system. Title III and its regulations govern discrimination in public accommodations. Section 12181(7) of the ADA defines "public accommodation" to cover private entities such as hotels, restaurants, retail stores, museums, and the like. The definition of "private entity" in 42 U.S.C. § 12181(6) specifically excludes any public entity such as the State of Hawaii. Accordingly, neither Title III of the ADA nor its regulations concerning service animals apply to the Hawaii quarantine system.[1]

## CONCLUSION

For the reasons stated above, the court finds that defendants have met their burden of showing that there are no genuine issues of material fact to preclude this court from entering judgment as a matter of law on plaintiffs' constitutional and statutory claims. Furthermore, plaintiffs have raised no specific facts evidencing a need for trial on these issues. Thus the court GRANTS defendants' motion for summary judgment.

IT IS SO ORDERED.

---

1. This court is not unsympathetic to the problems the State of Hawaii's quarantine system imposes upon the visually impaired. However, the court is also mindful of the benefit to all the people of Hawaii, including the visually impaired, which accrues as the result of Hawaii's remaining rabies-free.