**Affirmed and Opinion filed June 13, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00619-CV

---

**COMUNIDAD BALBOA, LLC, Appellant**

**V.**

**THE CITY OF NASSAU BAY, DON MATTER (MAYOR), JOHN HAUGEN (CITY COUNCIL POSITION 1), DR. SANDRA MOSSMAN (COUNCIL POSITION 2), RON SWOFFORD (COUNCIL POSITION 3), BRAD BAILEY (COUNCIL POSITION 4), MARK DENMAN (COUNCIL POSITION 5), BOB WARTERS (COUNCIL POSITION 6), AND CHRIS REED (CITY MANAGER), Appellees**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 994944**

---

## O P I N I O N

In a single issue, Comunidad Balboa, LLC ("Comunidad") contends the trial court erred by granting the plea to the jurisdiction filed by The City of Nassau Bay, Don Matter (Mayor), John Haugen (City Council Position 1), Dr. Sandra Mossman

(Council Position 2), Ron Swofford (Council Position 3), Brad Bailey (Council Position 4), Mark Denman (Council Position 5), Bob Warters (Council Position 6), and Chris Reed (City Manager).[1]  We affirm.

## I. BACKGROUND

In December 2003, Comunidad purchased an apartment complex ("the Complex" or, more generally, "the Property") located within the City's boundaries and built in 1969.  Comunidad is a non-profit corporation and intended to use the Complex to make affordable housing available to low-income persons.

Comunidad alleges the following facts in its first amended petition and first and second supplements to the amended petition (we refer to these pleadings collectively as "petition").  In late 2005 and 2006, Comunidad attended several meetings to which the City invited private developers interested in purchasing the Property.  Nevertheless, Comunidad never consummated a sale with a developer.  Consequently, the City began a course of action to hinder Comunidad's use of the Complex.

The City first filed a lawsuit challenging Comunidad's property tax exemption related to the Complex.[2]  The City then amended its fire-prevention ordinances to require the installation of sprinkler systems in certain newly-built and existing structures.[3]  The Complex is the only existing structure in the City subject to compliance with the ordinances.  The ordinances also provided that

---

[1] We will use the term "the City" when referring to The City of Nassau Bay by itself and all appellees collectively.

[2] In 2011, our court reversed a summary judgment in favor of the City in the tax-exemption lawsuit.  *See generally Comunidad Balboa, LLC v. City of Nassau Bay*, 352 S.W.3d 72 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

[3] *See* City of Nassau Bay Code of Ordinances, Part II, ch. 8, art. III, §§ 8-30–8-35 (available as of June 2013 at http://library.municode.com/index.aspx?clientID=11324&stateID=43&statename=Texas).

2

those in noncompliance "shall be punished by a fine not to exceed two thousand dollars ($2,000.00)" for each day of noncompliance.[4] Comunidad alleges it would need to spend over $1 million dollars to retrofit the Complex with the required sprinkler system. The City rejected Comunidad's architects' alternative methods for upgrading fire suppression in the Complex. Moreover, Comunidad alleges it was awarded a grant by the State which included funds for the sprinkler system, but the City was instrumental in convincing the State to revoke the grant. At the time Comunidad filed its amended petition, the City had issued Comunidad over 50 citations for noncompliance with the ordinances (although Comunidad asserts the citations were sent to another entity, not Comunidad).

In June 2011, Comunidad sued the City for conspiracy and inverse condemnation and sought injunctive and declaratory relief. Shortly thereafter, the trial court issued a temporary restraining order, restraining the City from enforcing the ordinances. Comunidad later added a nuisance claim against the City. The City filed a plea to the jurisdiction, requesting dismissal of all Comunidad's claims. The trial court granted the plea, rendering a final judgment.

## II. STANDARD OF REVIEW: PLEA TO THE JURISDICTION

In a single issue, Comunidad contends the trial court erred by granting the City's plea to the jurisdiction. Whether a court has subject-matter jurisdiction is a question of law we review *de novo*. *Tex. Dep't of Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction. *Id.* at 226. We should glean the plaintiff's intent and construe the pleadings liberally in favor of jurisdiction. *Id.* If the factual allegations of the pleadings neither affirmatively demonstrate that the trial

---

[4] City Ordinances, § 8-33, *see* footnote 3, *supra*.

3

court has jurisdiction nor affirmatively demonstrate incurable jurisdictional defects, the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate jurisdiction, the court should sustain the plea and dismiss the suit without allowing the plaintiff an opportunity to amend. *Id.* at 227.

## III. INVERSE CONDEMNATION

Comunidad first argues the trial court erred by dismissing Comunidad's inverse condemnation claim for want for jurisdiction.

The Texas Constitution provides a clear and unambiguous waiver of immunity from suit for inverse condemnation claims under article I, section 17 (Takings Clause). Tex. Const. art. I, § 17; *City of Dallas v. Stewart*, 361 S.W.3d 562, 568 (Tex. 2012). However, a "trial court lacks jurisdiction and should grant a plea to the jurisdiction where a plaintiff cannot establish a viable takings claim." *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, --- S.W.3d ---, No. 10-1020, 2013 WL 1365936, at *2 (Tex. Apr. 5, 2013) (citation omitted); *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (explaining trial court lacks subject-matter jurisdiction if governmental unit has immunity from suit).

The elements of an inverse condemnation claim are (1) the governmental entity intentionally performed an act in the exercise of its lawful authority, (2) that resulted in the taking, damaging, or destruction of the claimant's property, (3) for public use. *City of Houston v. Trail Enters., Inc.*, 377 S.W.3d 873, 878 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). An inverse condemnation claim may be based on a physical or regulatory taking. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998); *City of Houston v. Maguire Oil Co.*, 342 S.W.3d 726, 735 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Comunidad's inverse condemnation claim is based solely on a regulatory-taking theory. There

4

are several types of regulatory taking. *See Maguire Oil Co.*, 342 S.W.3d at 735 (describing theories of regulatory taking). Relevant to this case are (1) a "total regulatory taking" and (2) a "*Penn Central* taking." *Id.* at 735–36.

## A. Total Regulatory Taking

A total regulatory taking occurs when "a restriction denies the landowner all economically viable use of the property or totally destroys the value of the property if the restriction renders the property valueless." *Mayhew*, 964 S.W.2d at 935; *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992) ("[W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking."). This is a *per se* taking entailing a relatively simple analysis of whether value remains in the property after the governmental action. *Mayhew*, 964 S.W.2d at 935; *Maguire Oil Co.*, 342 S.W.3d at 736 n.6. To deprive an owner of all economically viable use of land is tantamount to depriving him of the land itself. *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 671 (Tex. 2004). This theory is limited to the extraordinary circumstance when no productive or economically viable use of land is permitted, and the landowner is left with a token interest. *Id.* (citations omitted).

As described above, Comunidad essentially alleges the cost of installing a sprinkler system is prohibitively high and it cannot continue to operate the Complex without installing the sprinkler because of continued ticketing. According to Comunidad, these facts "render the property wholly useless" and "cause a total destruction of value." However, the thrust of Comunidad's complaint is not that the ordinances left its property with no economic use or value, but that the ordinances are too financially burdensome for Comunidad. Even if Comunidad cannot afford to continue using the Complex for low-income housing

5

because of the ordinances, Comunidad does not allege any facts supporting the extraordinary circumstance that the property (of which the Complex is only a part) is rendered totally valueless.[5] We decline to hold Comunidad's alleged inability to afford the required sprinkler system or continued ticketing has "denie[d] [Comunidad] all economically viable use of the property or totally destroy[ed] the value of the property [by] render[ing] the property valueless." *Mayhew*, 964 S.W.2d at 935. Accordingly, Comunidad has not alleged facts affirmatively demonstrating the trial court's jurisdiction over Comunidad's claim for a total regulatory taking.

## B. *Penn Central* Taking

We next address whether Comunidad has sufficiently alleged a *Penn Central* taking. A *Penn Central* taking occurs when a government regulation has unreasonably interfered with a property owner's right to use and enjoy his property considering the following three factors: (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct

---

[5] A plaintiff may not rely on the *per se* rule of a total regulatory taking by alleging a *portion* of his real property was rendered valueless.

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole—here, the city tax block designated as the "landmark site."

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 130–31 (1978); *see also Centeno v. City of Alamo Heights*, No. 04-02-00677-CV, 2004 WL 624554, at *2 (Tex. App.—San Antonio Mar. 31, 2004, no pet.) (mem. op.) ("[W]hether a regulation denies a landowner the economically viable use of a part of the property is not the test. The test is whether the zoning regulations deprive the Centenos of all economically viable use of their property." (citation omitted)); *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 71 S.W.3d 18, 44 (Tex. App.—Fort Worth 2002) ("[W]here part of a land owner's property is allegedly 'taken,' the effect of the regulation must be viewed with respect to the impact on the property as a whole to determine whether a taking has actually occurred."), *aff'd*, 135 S.W.3d 620 (Tex. 2004).

investment-backed expectations;" and (3) "the character of the governmental action." *Maguire Oil Co.*, 342 S.W.3d at 736 n.7 (quoting *Penn Cent.*, 438 U.S. 104, 124). However, consideration of whether a *Penn Central* taking has occurred typically involves an ad hoc, highly fact-specific analysis. *Trail Enters., Inc.*, 377 S.W.3d at 878. In other words, there is usually no bright-line test and the relevant factors may vary from case to case. *Id.* In determining whether the plaintiff alleged facts affirmatively demonstrating the trial court's subject-matter jurisdiction over a *Penn Central* taking claim, we construe the facts liberally in favor of the plaintiff. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476, 482 n.27, 491 (Tex. 2012).

### 1. Economic Impact on Comunidad

We must take as true Comunidad's allegations that it cannot afford the required $1 million sprinkler system or to continue paying tickets for noncompliance with the ordinance. Because of the ordinance, Comunidad will not be able to use the Complex for low-income housing. Furthermore, without being granted a variance or other accommodation, Comunidad is not able to convert the building into business space because the fire-sprinkler requirement would still apply under the ordinance. We also recognize Comunidad is a non-profit corporation which purchased the property for the purpose of providing low-income housing to the community. Thus, the ordinance has a substantial economic impact on Comunidad. Nonetheless, "[p]urchasing and developing real estate carries with it certain financial risks, and it is not the government's duty to underwrite this risk as an extension of obligations under the takings clause." *Sheffield*, 140 S.W.3d at 677. Accordingly, although this factor weighs in favor of a taking, it is not dispositive.

7

## 2. Extent of Interference with Comunidad's Distinct Investment-Backed Expectations

When Comunidad purchased the Complex, it was occupied and did not violate existing fire ordinances. Comunidad intended to use the property for low-income housing and sought and received a tax exemption for that purpose. Subsequently, the City amended the fire ordinances in such a way that makes it economically infeasible for Comunidad to operate the Complex. "The existing and permitted uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation." *Mayhew*, 964 S.W.2d at 936 (citation omitted). Thus, the ordinances substantially interfere with Comunidad's investment-back expectations.

Nevertheless, the City acted well within its police powers to modernize ordinances pertaining directly to life-saving fire suppression in a multi-family dwelling. It is axiomatic that safety equipment, procedures, and technology are constantly being improved. Thus, the owner of a large apartment complex should anticipate additional expenditures due to enactment of new safety regulations. *See Lucas*, 505 U.S. at 1027 ("It seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers.").

> Each owner of any property and particularly of a multi-tenanted dwelling must, it seems to this Court, be deemed to have purchased same with a consciousness of the possibility (if not indeed, in these volatile times, of the probability) that new technological developments and sociological advances would insistently and inescapably require the installation of newly-perfected protections of life and limb. It would be a strange kind of government and a particularly hazardous way of life where all advance was confined to newly-erected structures while those residing in older buildings were condemned to exposure to dangers which latter-day research had developed means to prevent or, at the very least, to minimize.

*People v. Halpern*, 304 N.Y.S.2d 183, 188 (N.Y. City Ct. 1969). "[I]n no case does the owner of property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws." *Queenside Hills Realty Co. v. Saxl*, 328 U.S. 80, 83 (1946). Therefore, we conclude the ordinances' interference with Comunidad's investment-back expectations does not weigh in favor of a taking.

### 3. Character of Governmental Action

We first note the City's ordinances do not directly restrict Comunidad's use of the property; instead, they create a financial burden for Comunidad. *See Hearts Bluff*, 381 S.W.3d at 480 ("We have held that a lack of a direct governmental restriction of the owner's use of her land or a lack of regulatory authority over the land-use decision at issue is dispositive in takings cases."). However, Comunidad's primary contention regarding why the ordinances effect a taking is that the City enacted the ordinances as part of a continuing course of bad-faith actions aimed to harm Comunidad.

We must take as true the following allegations: (1) the City began targeting Comunidad's property after the City's failed attempts to facilitate a sale of the Property to private developers in 2005 and 2006; (2) the City sought to create problems for Comunidad by challenging its tax exemption; (3) the City enacted the ordinances for the purpose of causing "a huge financial burden" to Comunidad; (4) the Complex is the only existing building in the City which must be retrofitted under the ordinances; (5) the City rejected all of Comunidad's architect's proposals for less-expensive fire-safety upgrades to the Complex; (6) after Comunidad received a state grant to pay for the required sprinkler system, the City was "instrumental in having the grant revoked"; (7) in August 2010, the City began issuing citations for Comunidad's noncompliance but apparently has been ticketing

the wrong entity; over 50 citations have been issued[6]; and (8) the City and mayor "have encouraged tenants to move from the [Complex]."

Whether the governmental entity acted in bad faith has often been a consideration in determining whether a governmental action gives rise to a compensable taking. *See id.* at 487. In *San Antonio River Authority v. Garrett Brothers*, a city caused a taking by intentionally disrupting a landowner's development of a subdivision in order to prevent an increase in the value of the land (which the city wanted to acquire for public use), despite the city attorney's opinion that the city could not legally halt development for such a reason. 528 S.W.2d 266, 268–70 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.). The court of appeals explained,

> [W]here the purpose of the governmental action is the prevention of development of land that would increase the cost of a planned future acquisition of such land by government . . . [, the government] can no longer pretend to be acting as a neutral arbiter. It is no longer an impartial weigher of the merits of competing interest among its citizens. Instead, it has placed a heavy governmental thumb on the scales to insure that in the forthcoming dispute between it and one, or more, of its citizens, the scales will tip in its own favor.

*Id.* at 274; *see State v. Biggar*, 873 S.W.2d 11, 12, 14 (Tex. 1994) (concluding taking occurred because State denied an easement exchange to landowners solely to reduce the value of their tract, which the County wanted to purchase for public use); *City of Austin v. Teague*, 570 S.W.2d 389, 393–94 (Tex. 1978) (concluding taking occurred because city passed an ordinance and denied plaintiffs' application for land-use permit for the purpose of acquiring the property for a scenic easement without having to pay for it; the City "singled out plaintiffs to bear all of the cost for the community benefit without distributing any cost among the members of the

---

[6] In its brief, Comunidad asserts "approximately 69 citations" have been issued.

community."); *see also Sheffield*, 140 S.W.3d at 678.

In *Hearts Bluff*, the supreme court recently addressed governmental bad faith in the context of a *Penn Central* analysis. 381 S.W.3d at 487–88. The court explained, "Evidence of bad faith is given due weight, but must be considered against other circumstances, including legitimate public benefits furthered by the action." *Id.* at 488. The court also noted, "If the State had targeted one particular landowner and treated him unfairly, there might be more merit to the claim." *Id.*; *see also Sheffield*, 140 S.W.3d at 676 ("[I]t ordinarily is, and should be, harder for the government to show that its interests have been substantially advanced by regulation directed at one lone landowner.").

According to Comunidad's pleadings, the City targeted Comunidad when amending the ordinances—Comunidad is the only existing structure subject to compliance with the amended ordinances. However, the new ordinances also require "installation of an automatic fire sprinkler system . . . in any new commercial building or commercial structure [of a certain size]," and that such installation "comply with all applicable adopted city codes and ordinances including all NFPA [National Fire Prevention Association] references and or codes."[7] Hence, the City's amendments were not solely directed at Comunidad. Furthermore, in a document attached to, and incorporated as part of, Comunidad's petition, Comunidad's architect admitted NFPA rules would require installation of a sprinkler system for a new building with the same specifications as the Complex.

Additionally, the ordinances expressly state, "The purpose of this article is to provide a reasonable degree of safety to persons occupying existing buildings by providing for the installation of automatic fire sprinkler systems in such buildings

---

[7] City Ordinances, § 8-34, *see* footnote 3, *supra*.

11

that do not already have such systems."[8]  Requiring a fire sprinkler upgrade—even though the Complex is the only existing building affected by the ordinances and even if the City's intent was to harm Comunidad and lower its property value—cannot be said to be wholly arbitrary or capricious when installation of the system must "meet the requirements and specifications of the current edition of the International Fire Code, Life Safety Code and the National Fire Codes."[9]

We also note the ordinances provide a three-year compliance schedule: (1) submission of plans and a permit application within one year; (2) installation of an approved, operational sprinkler system to 50% of the structure within two years; and (3) installation of an approved, operational sprinkler system to 100% of the structure within three years.  Additionally, further tempering the City's alleged bad faith is the fact that the City did not begin issuing citations against Comunidad for noncompliance with any of these milestones until August 2010, even though the City could have begun citing Comunidad in July 2008.

We recognize that, even for important public-safety reasons, such as fire suppression, the government may not take private property in violation of the Texas Constitution.  *See Garrett Bros.*, 528 S.W.2d at 273 ("If there is a taking the constitution requires payment, even though the taking be for the purpose of promoting the public health, safety, morals or welfare and, therefore, involves an exercise of the police power.").  Nonetheless, the importance of the public benefits furthered by governmental action is a factor for consideration, *see Hearts Bluff*, 381 S.W.3d at 488, and promoting fire safety in multi-family dwellings is inarguably an important governmental function.

---

[8] City Ordinances, § 8-35, *see* footnote 3, *supra*.

[9] City Ordinances, § 8-35, *see* footnote 3, *supra*.

This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails. . . . Consequently, our holding today in no way alters the analysis governing the State's power to require landlords to comply with building codes and provide utility connections, mailboxes, smoke detectors, fire extinguishers, and the like in the common area of a building.

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982).

Protection of the safety of persons is one of the traditional uses of the police power of the States. Experts may differ as to the most appropriate way of dealing with fire hazards in lodging houses. . . . But the legislature may choose not to take the chance that human life will be lost in lodging house fires and adopt the most conservative course which science and engineering offer. It is for the legislature to decide what regulations are needed to reduce fire hazards to the minimum. Many types of social legislation diminish the value of the property which is regulated. The extreme cases are those where in the interest of the public safety or welfare the owner is prohibited from using his property. We are dealing here with a less drastic measure. But in no case does the owner of property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws. The police power is one of the least limitable of governmental powers, and in its operation often cuts down property rights.

*Saxl*, 328 U.S. at 82–83.

Accordingly, because the ordinances were reasonably tempered, provided an extended compliance schedule, and pertained to a significant governmental concern, we conclude the City's alleged bad faith does not transform its amendment of the ordinances into an unconstitutional taking. Therefore, considering our whole *Penn Central* analysis, we hold Comunidad has not alleged a viable regulatory takings claim.

Admittedly, one of Comunidad's primary bad-faith allegations is that, after receiving a grant from the State, a portion of which was to pay for the sprinkler system, the City was instrumental in convincing the State to revoke the grant. Because Comunidad alleges only a part of the grant was to be used for the new sprinkler system, it is unclear why the City allegedly opposed the grant. Comunidad argues the City blocked funds necessary to pay for the sprinkler system in order to reduce the property's value. According to Comunidad, the City sought to spur economic development and eventually increase tax revenue resulting from a commercial use of the property.

Comunidad asserts in its brief, "[P]roperty in Texas cannot be condemned for the purpose of transferring the property to a private entity for the primary purpose of economic development or enhancement of tax revenues. Tex. Const. art. I, § 17(b)." As amended in 2009, article I, section 17 excludes from the definition of "public use" transfers of property to private entities for the primary purpose of economic development or enhancement of tax revenues. Tex. Const. art. I, § 17(b); *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Texas, LLC*, 363 S.W.3d 192, 195 n.3 (Tex. 2012).[10] We will assume this version of article I, section 17 applies because of Comunidad's reliance on it and because the City does not argue otherwise. Thus, to the extent Comunidad alleges the City enacted the ordinances and committed other acts in order to increase tax revenues, it has failed to allege a viable takings claim.

---

[10] *But see generally Kelo v. City of New London, Conn.*, 545 U.S. 469 (2005) (holding government's taking and transferring private property to another private person for purpose of increasing tax revenue was proper use of eminent domain power under Fifth Amendment of United States Constitution).

In sum, we overrule the portion of Comunidad's sole issue in which it contends the trial court erred by dismissing Comunidad's inverse condemnation claim.

## IV.  COMUNIDAD'S OTHER CLAIMS

In its petition, Comunidad also asserted claims for nuisance and conspiracy and requested injunctive and declaratory relief.  Additionally, Comunidad apparently asserted a claim that the City deprived Comunidad of property without due course of law, in violation of Article I, Section 19 of the Texas Constitution. *See* Tex. Const. art. I, § 19.

On appeal, Comunidad does not assert any argument relative to its nuisance claim.  Accordingly, we summarily affirm the trial court's dismissal of this claim.

Regarding conspiracy, the City moved for dismissal of this claim based on absolute legislative immunity and under section 101.106 of the Texas Civil Practice and Remedies Code.  In its appellate briefing, Comunidad does not address these bases for dismissal; instead, Comunidad merely rehashes the factual basis for its conspiracy claim.  Because Comunidad does not address the City's legal arguments for dismissal of the conspiracy claim, we overrule this portion of Comunidad's issue.  *See Ollie v. Plano Ind. Sch. Dist.*, 383 S.W.3d 783, 790 (Tex. App.—Dallas 2012, pet. denied); *Clifton v. Walters*, 308 S.W.3d 94, 99 (Tex. App.—Fort Worth 2010, pet. denied).

Comunidad also seeks to enjoin enforcement of the ordinances, and a declaration that the ordinances are unconstitutional, because the City's amendment of the ordinances violated Comunidad's right to due course of law.  In its plea to the jurisdiction, the City argued, and cited authorities for the proposition, that the trial court does not have jurisdiction over Comunidad's claims for injunctive and

declaratory relief based on the unconstitutionality of the ordinances because such claims must be resolved in a criminal proceeding resulting from enforcement of the penal ordinance at issue. *See City of La Marque v. Braskey*, 216 S.W.3d 861, 863–64 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (concluding district court lacked civil jurisdiction to enjoin enforcement of penal ordinance because criminal proceeding was proper venue for plaintiff's constitutional challenge to ordinance); *see also Ryan v Rosenthal*, 314 S.W.3d 136, 141–42 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Comunidad did not address this argument in its response to the plea or appellate briefing. Thus, we overrule that portion of Comunidad's issue regarding its claims for equitable relief based on the unconstitutionality of the ordinances. *See Clifton*, 308 S.W.3d at 99.[11]

Finally, Comunidad argues in its brief, "[The City] set upon a course of action to attempt to intentionally decrease the value of the property since the [City] could not condemn the property to transfer to a third party." According to Comunidad,

> The city ordinance was enacted to apply only to Comunidad's property and has unlawfully deprived [Comunidad] of the use, benefit and enjoyment of the property and has drastically reduced the value of the property because of the actions of the defendants; through the issuance of citations for violations of the city ordinance and the encouragement of tenants to move from the property.

Comunidad cites no authority supporting that the City's actions amounted to a due-course-of-law violation, other than citing article I, section 19. Thus, we overrule that portion of Comunidad's issue regarding its due-course-of-law claim based on the City's alleged plan to transfer the property to another private party. *See id.*

---

[11] We do not consider whether the trial court actually lacked jurisdiction to consider Comunidad's claims for injuctive and declaratory relief based on the unconstitutionality of the ordinances.

We affirm the trial court's judgment.[12]

/s/    John Donovan
       Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

---

[12] We do not remand for Comunidad to have an opportunity to amend its pleadings because Comunidad did not request such opportunity in the trial court. *See Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 570 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("[T]hrough inaction, a plaintiff may lose the opportunity to amend."); *see also Ogueri v. Tex. S. Univ.*, No. 01-10-00228-CV, 2011 WL 1233568, at *6 n.6 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.); Rebecca Simmons & Suzette Kinder Patton, *Plea to the Jurisdiction: Defining the Undefined*, 40 St. Mary's L.J. 627, 659–60 (2009).